IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 11-cv-01342-PAB

RHONDA M. DOTY,

    Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

_____

**ORDER**
_____

This matter comes before the Court on plaintiff Rhonda M. Doty's complaint [Docket No. 1], filed on May 20, 2011. Plaintiff seeks review of the final decision of defendant Michael J. Astrue (the "Commissioner") denying plaintiff's claim for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-33 and 1381-83c.[1] The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).

**I. BACKGROUND**

Plaintiff applied for disability benefits on August 24, 2007, alleging that she had been disabled since June 15, 2007. After an initial administrative denial of plaintiff's application, an administrative law judge ("ALJ") held a hearing on November 18, 2009 and denied plaintiff's claim in a decision dated March 2, 2010.

---

[1]The Joint Case Management Plan indicates that neither party requests oral argument. *See* Docket No. 7 at 3, ¶ 9.

The ALJ determined that plaintiff had the "following severe impairments: post traumatic stress disorder, depression, and arthritis of the spine." R. at 13. The ALJ found that these impairments, alone or in combination, did not meet one of the regulations' listed impairments. R. at 14. The ALJ ruled that plaintiff retained the residual functional capacity ("RFC") to

> perform light work as defined in 20 CFR [§] 404.1567(b) and 416.967(b), while lifting and carrying up to ten pounds frequently and up to twenty pounds occasionally; sitting, and standing/walking for up to six hours each in a regular eight hour work day; and while performing simple, unskilled work, involving one, two, or three step instructions, requiring no more than minimal direct contact with the general public and not requiring close proximity to co-workers, meaning the claimant could not function as a member of a team.

R. at 15. Based upon this RFC and in reliance on the testimony of a vocational expert ("VE"), the ALJ concluded that "claimant is capable of performing past relevant work as a housekeeper/cleaner," R. at 19, and therefore was not disabled. *See* R. at 20.

The Appeals Council denied plaintiff's request for review of this denial. *See* R. at 1. Consequently, the ALJ's decision is the final decision of the Commissioner.

## II. ANALYSIS

### A.  Standard of Review

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *See Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003). The district court may not reverse an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the

ALJ was justified in her decision.  *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990).  "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).  Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  The district court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty*, 515 F.3d at 1070.  Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from lack of substantial evidence."  *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### B.  The Five-Step Evaluation Process

To qualify for disability benefits, a claimant must have a medically determinable physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy.  42 U.S.C. § 423(d)(1)-(2).

Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006). The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R. § 404.1520(b)-(f)). A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health and Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability. However, "[i]f the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of her age, education, and work experience." *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005); *see also Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5 (1987). While the claimant has the initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts." *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

**C. The ALJ's Decision**

Plaintiff argues that the ALJ should have found plaintiff's "impaired intellectual functioning" to be severe at step two of the analysis. Even assuming plaintiff is correct, she does not explain how any such error impacted the ALJ's ultimate determination. Where an ALJ finds that a claimant has one or more severe impairments, yet erroneously fails to list others, that error often will have little independent impact on the ultimate disability determination. The Social Security regulations do not contemplate a finding of disability at step two. *See* 20 C.F.R. § 404.1520(a)(4)(ii) ("At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled."). Rather, step two in many ways acts as a threshold check against non-meritorious claims of disability. *See Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining that at step two "the claimant must make a threshold showing that his medically determinable impairment or combination of impairments significantly limits his ability to do basic work activities").

At step four, an ALJ is to consider all of a claimant's impairments and limitations, even those that are not severe. *See* 20 C.F.R. § 404.1520(e) ("If your impairment(s) does not meet or equal a listed impairment, we will assess and make a finding about your residual functional capacity based on all the relevant medical and other evidence in your case record, as explained in § 404.1545."); 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware,

5

including your medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and 404.1523, when we assess your residual functional capacity."). Therefore, the more material question is whether the ALJ failed to consider all evidence of plaintiff's impairments, severe and otherwise, in determining his RFC. Here, the ALJ made clear that "the effects of the [plaintiff's] limited education will be considered in determining her residual functional capacity," R. at 14, and plaintiff has not cited any persuasive basis for concluding that the ALJ failed to do so.[2]

Turning to the step four analysis conducted here, plaintiff contends, among other things, that the ALJ did not properly assess and weigh the opinion of Dr. Sara Sexton in determining plaintiff's RFC. Dr. Sexton, "the State agency reviewing psychologist," R. at 18, completed a Mental Residual Functional Capacity Assessment form. *See* R. at 233. In that form, Dr. Sexton indicated that plaintiff was "moderately limited" in her "ability to understand and remember detailed instructions," "to carry out detailed instructions," "to maintain attention and concentration for extended periods," "to work in coordination with or proximity to others without being distracted by them," "to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and

---

[2] Plaintiff argues that, after the step two analysis, the ALJ's decision "remains silent as to the effects of this issue on Ms. Doty's mental residual functional capacity." Docker No. 12 at 12. The ALJ did note that Dr. Rodriguez's opinion was based, in part, on plaintiff's "limited education," R. at 18, and quoted Dr. Sexton's comment that plaintiff "has a history of learning problems." R. at 19. The ALJ cited this information in the context of explaining the basis for plaintiff's RFC, which limited her to "performing simple, unskilled work, involving one, two, or three step instructions." R. at 15. Plaintiff does not explain why this aspect of the RFC is inconsistent with her "impaired intellectual functioning."

length of rest periods," "to interact appropriately with the general public," "to accept instructions and respond appropriately to criticism from supervisors," and "to get along with coworkers or peers without distracting them or exhibiting behavioral extremes." R. at 233-34.  Dr. Sexton then elaborated on her findings by stating that plaintiff

> experiences some depression and anxiety but is cognitively intact. Concentration, social functioning and [activities of daily life] are mildly affected.
>
> She has a history of learning problems[;] however, she should still be able to perform work needing little or no judgment, involving simple duties, which can be learned in a short period of time.  [S]he cannot work closely with supervisors or coworkers but can accept supervision and related [sic] to coworkers if contact is not frequent or prolonged. [She] [c]annot work with the general public.

R. at 235.

Based upon the foregoing, the ALJ concluded that, "[c]learly, Dr. Sexton did not intend for her list of moderation limitations to convey the impression that the claimant was mentally incapable of work, instead clearly stating her position that the claimant could sustain simple, unskilled work tasks, not involving significant contact with supervisors or co-workers, and involving no contact with the general public."  R. at 19. The ALJ further stated that, "[w]hile the [plaintiff's] reports of her activities of daily living fail to support that she requires work involving absolutely no contact with the general public," the ALJ gave "great weight to the balance of Dr. Sexton's opinion, as it is consistent with and well supported by the evidence as a whole."  R. at 19.

The balance of Dr. Sexton's medical opinion, however, included a finding that plaintiff was moderately limited in her "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at

a consistent pace without an unreasonable number and length of rest periods." R. at 234. The ALJ's discussion of Dr. Sexton's opinion failed to address whether this limitation might restrict the jobs available to plaintiff. The Commissioner argues that this did not constitute error because the categories in the first section of the Mental Residual Functional Capacity Assessment form, where Dr. Sexton checked boxes indicating the aforementioned moderate limitations, "do not describe function and do not usefully convey the extent of capacity limitations." Docket No. 13 at 18. The Commissioner further cites its Program Operations Manual System ("POMS") for the proposition that the first section of the form "is merely a worksheet in aid in deciding the presence and degree of functional limitations and the adequacy of documentation, and does not constitute a residual functional capacity assessment." POMS DI 24510.060B.2. Assuming that is true, the ALJ failed to address Dr. Sexton's omission of any reference to at least one significant moderate limitation, i.e., on plaintiff's ability to maintain attendance at work, from her narrative conclusion, despite the guidance in POMS which require its inclusion. *See* DI 24510.065, Section III of SSA-4734-F4-SUP - Functional Capacity Assessment, *available at* https://secure.ssa.gov/apps10/poms.nsf/lnx/0424510065; *see also Baysinger v. Astrue*, No. 11-cv-00333-WYD, 2012 WL 1044746, at *6 (D. Colo. March 28, 2012) ("[T]he state agency provider's failure to include the moderate limitations in section III or at least to ensure that they are represented in some manner in that section is . . . contrary to the POMS. The POMS requires the state medical consultant prepare in section III a narrative statement for each of the subsections in Sections I and II. In doing so, the consultant is required to address each of the four mental categories (Understanding

and Memory, Concentration and Persistence, Social Interaction, and Adaptation) and provide a narrative discussion of the individual's capacities and limitations as to same. . . .") (citations omitted).

Moreover, the Commissioner's description of the form is inconsistent with how it is described on its face. Section I of the form is entitled "Summary Conclusions" and instructs those completing the form to "record[] summary conclusions derived from the evidence in file" and that "[e]ach mental activity is to be evaluated within the context of the individual's capacity to sustain that activity over a normal workday and workweek, on an ongoing basis." R. at 233. Section III allows for, *inter alia*, "[d]etailed explanation of the degree of limitation for each category," R. at 233, and "elaborations" on the conclusions reached in Section I. R. at 235.[3] Moreover, the Commissioner's interpretation of the POMS is inconsistent with the law of the Tenth Circuit, which does not permit that it be left "unexplained why the ALJ adopted some of [a medical opinion's] restrictions but not others." *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007); *see Baysinger*, 2012 WL 1044746, at *6 ("[A]s to the argument that the ALJ is not required to consider the impairments found in Section I per the POMS, I find that portion of the POMS is contrary to Tenth Circuit law at least in the situation where, as here, the findings in Section III of the form do not adequately take into account those impairments.") (citing *McLeran v. Astrue*, No. 09-cv-02924-LTB, 2010 WL 4318579, at

---

[3] *See Bartley v. Astrue*, 2008 WL 594468, at *5 (E.D. Ky. Feb. 29, 2008) ("The POMS, while it can be considered persuasive authority by courts, does not have the force of law. In the present action, the interpretation insisted upon by the defendant is contradicted by the definitions contained on the Mental Residual Functional Capacity Form itself.") (citation omitted).

*6 (D. Colo. Oct. 25, 2010)).

Furthermore, the ALJ did not adequately address the inconsistency between Dr. Sexton's opinion that plaintiff could sustain work, despite her limitations, and the VE's conclusion to the contrary when presented with a hypothetical question including all of the limitations noted by Dr. Sexton. When all of the moderate limitations were presented to the VE by plaintiff's counsel, the VE testified that such an individual would "[m]ost likely" be "unable to engage in sustained work activity." R. at 48. The ALJ appears to have rejected this opinion, at least in part, because she determined that it constituted a medical, rather than vocational, opinion. *See* R. at 48-49 ("I'm just going to cut off this line [of] questioning because he's not a[ medical expert] and I don't have a medical expert for you. And you're asking really more medical type questions."); *see also* R. at 44-45. The Court does not find anything about plaintiff's question to the VE that requested anything other than a vocational opinion based on a hypothetical set of limitations, the procedure consistently used by the Commissioner, including in this case. *See* R. at 42-43 (where the ALJ presented hypothetical questions to VE which included certain limitations).

In light of the foregoing, this matter must be remanded for additional proceedings. Because the ALJ's assessment of the evidence on remand may impact how other opinions in the record are viewed, the Court will not reach plaintiff's arguments regarding the ALJ's weighing of the opinions of Carlos Rodriguez, Ph.D., and Richard Madsen, Ph.D. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand."); *see also Daniell v. Astrue*,

10

384 F. App'x 798, 804 (10th Cir. 2010).

## III. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the decision of the Commissioner that plaintiff was not disabled is REVERSED and REMANDED for further proceedings consistent with this opinion.

DATED September 30, 2012.

BY THE COURT:

  s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge